## S04A0040. HEYWARD v. HUMPHREY.
(592 SE2d 660)

HINES, Justice.

On December 18, 1998, Stanley Heyward entered negotiated pleas of guilty to charges of aggravated battery, aggravated assault,

---

criminal trespass, and possession of a firearm by a convicted felon, and he was sentenced to a total of 30 years, 15 to be served on probation. On July 3, 2002, Heyward filed a petition for writ of habeas corpus challenging the validity of the pleas on the ground, inter alia, that his trial counsel was ineffective. The habeas court rejected the claim and denied relief. We granted Heyward's pro se application for a certificate of probable cause to appeal the denial of his petition for writ of habeas corpus to determine whether Heyward was denied the effective assistance of trial counsel. For the reasons which follow, we reverse the judgment of the habeas court.[1]

> In *Hill v. Lockhart,* [474 U. S. 52 (106 SC 366, 88 LE2d 203) (1985)] the United States Supreme Court established the test for reviewing claims of ineffective assistance of counsel in the context of a guilty plea. The Court held that a defendant who pleads guilty and who seeks to overturn his conviction because of counsel's errors must meet the now familiar two-part test of *Strickland v. Washington,* [466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)] – deficient performance and prejudice. The analysis of counsel's performance is similar whether in the context of a trial or a guilty plea. The prejudice component in the context of a guilty plea, however, is met by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." [*Hill,* 474 U. S. at 58-59.]

*State v. Heath,* 277 Ga. 337, 338 (588 SE2d 738) (2003).

Heyward contends that his trial counsel was deficient in failing to properly investigate the case against him, which would have revealed that he had a viable justification defense, and in allowing him to plead guilty after it became apparent that the State's case against him was unraveling. He argues that these deficiencies resulted in prejudice to him because had the case been adequately investigated and had he been properly advised, he would have insisted on a trial, where he could have presented a justification defense, and, more importantly, where the State might have been unable to obtain a conviction due to insufficient evidence. The habeas court found that Heyward failed to satisfy either prong of *Strickland,*

---

[1] Heyward also challenged the validity of the pleas on the grounds that the trial court failed to determine whether he understood the nature of the charges and to advise him of the elements of the charged offenses, and that the pleas were involuntarily and unknowingly entered. The habeas court's determinations with regard to such issues are not addressed in this appeal.

and specifically, that trial counsel had conducted an adequate investigation into the facts and circumstances surrounding Heyward's case, that counsel's conduct fell within the wide range of reasonable, professional conduct, and that all of counsel's decisions were made in the exercise of reasonable, professional judgment. But, the record demonstrates otherwise.

### A. Justification Defense.

Heyward was charged, inter alia, with shooting lounge owner Raymond Lewis. The State's case revolved around the account of events surrounding the shooting by Lewis and eyewitnesses Bryant, Wiggins, Thornton, and Bostick. At the plea hearing, the prosecutor disclosed that Bryant, a security guard, had given a written statement that Lewis first drew his weapon on Heyward. He elaborated that Bryant, "who was standing in the window, said [Lewis] raised his gun and that's when Mr. Heyward fired back." The prosecutor further revealed that Bryant had missed two scheduled meetings with him, had not returned telephone calls from the district attorney's office, and had failed to respond to two cards left at his home by the State's investigator.

At the habeas hearing, Heyward questioned his trial counsel, Mr. Erb, about witness Bryant and the possibility of a justification defense:

> HEYWARD: So during your brief investigation, was it revealed to you that the victim in this case pulled a shotgun on me first?
> ERB: No.
> HEYWARD: Would it be fair for a person to pull a gun on another person and that person doesn't pull a gun to protect himself?
> ERB: That would depend on the circumstances.
>
> . . .
>
> HEYWARD: Mr. Erb, why didn't you inform me that justification was a defense on the charges I was facing?
> ERB: The facts do not qualify for justification in this case.
>
> . . .
>
> HEYWARD: In response to the facts of my case, would you say that I was justified in using necessary force to protect myself if the victim pointed his weapon at me first?
> ERB: No.

HEYWARD: What defense did you discuss with me Friday prior to me entering the guilty plea?
ERB: I don't recall, really.

Counsel's testimony at the habeas hearing clearly demonstrates that his pretrial investigation of the case was seriously lacking because he knew nothing about this potentially key witness. What is more, it is plain that counsel failed to react to the information about this witness provided by the prosecutor at the plea hearing. The witness's home address was known by the State, and there was nothing to prevent the attempted subpoena of the witness or any measure by defense counsel to try to obtain possibly exonerating evidence from the witness.

The State attributes counsel's troubling testimony to faulty recollection and counsel's failure to assert a justification defense as a tactical decision based upon other facts in the case. However, counsel did not testify that he could not recall whether there was evidence that Lewis first pulled a shotgun on Heyward. Rather, counsel flatly denied knowledge of the evidence. As for the failure to raise justification being a tactical decision, it is certainly true that in general reasonable tactics and strategy do not amount to ineffective assistance of counsel. *Springs v. Seese*, 274 Ga. 659, 661 (2) (558 SE2d 710) (2002). But, here counsel's own testimony belies that there was an informed decision to reject a justification defense, and clearly shows that the failure to explore the possible defense was based on a lack of vital information. Therefore, the failure to pursue a justification defense cannot be deemed a matter of tactics or strategy.[2]

A habeas court's factual determination on a claim of ineffective assistance of counsel will be affirmed unless the reviewing court concludes that the habeas court's factual findings are clearly erroneous. *Head v. Thomason*, 276 Ga. 434, 436 (1) (578 SE2d 426) (2003). Here, the habeas court was clearly in error in finding that trial counsel had conducted an adequate investigation into the facts and circumstances surrounding Heyward's case. Id.

### B. Advising and/or Allowing Heyward to Plead Guilty in Spite of the Unraveling of the State's Case.

During the habeas hearing, Heyward questioned Erb about difficulties that the State had with proving its case against him, and Erb

---

[2] The State asserts that a justification defense was not available to Heyward because he was already outside the lounge and could have walked away instead of shooting Lewis. However, it would have been for the jury to examine the evidence and to determine whether Heyward shot Lewis in a justified act of self-defense. *Lewis v. State*, 270 Ga. 891, 892 (2) (515 SE2d 382) (1999).

flatly denied having any knowledge of problems with the prosecution.[3] Yet, the transcript of the plea proceeding reveals that defense counsel was made fully aware of potentially fatal weaknesses in the State's case against his client.

At the plea hearing, the assistant district attorney handling the case candidly informed the trial court and the defense that the State was having great difficulties with the prosecution; it could not secure the needed testimony from the victim or the identified witnesses to the shooting. As already noted, the security guard, Bryant, was totally unresponsive to contacts by the district attorney's office. The prosecutor further related that there was a probation violation charged against Wiggins, who was an eyewitness to the initial altercation between Heyward and Lewis, and that despite efforts by the federal marshal and the sheriff's office, Wiggins could not be located. Eyewitness Thornton was "reluctant to come forward." Even though Thornton had finally been found and stated that he would come to court, he failed to appear the last time that the case was scheduled. Witness Bostick, who knew Heyward, recanted her initial version of events. Finally, the victim, Lewis, was reluctant to testify against Heyward.

Yet, in the face of these admissions that the State's case had all but fallen apart, there is no evidence that defense counsel reassessed the position of his client or the soundness of accepting the negotiated deal, or that he discussed with Heyward any consequences of the revealed difficulties with the prosecution. This clearly calls into question the habeas court's finding that all of counsel's decisions were made in the exercise of reasonable, professional judgment. *Head v. Thomason,* supra at 436 (1).

Even more disturbing is the following colloquy which occurred during the plea questioning:

COURT: Therefore, to the offense of aggravated battery,

---

[3] HEYWARD: The State was having trouble preparing their case for trial. Do you think that it was wise to allow me to enter a guilty plea since some of the State's witnesses were not cooperating and had begun to change their story?
ERB: I have no idea of any difficulty the State was having, so I couldn't help you there.
HEYWARD: It is a reasonable possibility that the charges against me would have been dropped if the State would not have gotten its witnesses to cooperate?
ERB: I really couldn't tell you.
HEYWARD: Sir, at the plea hearing, I stated to the Judge that I was not actually guilty of aggravated battery. The Judge said, I will see you Monday. Would it have been wise to proceed to trial and force the State to bring forth its witnesses?
ERB: Not in my opinion, and not in your opinion at the time, because I asked if you wanted to go to trial, and you said no.
HEYWARD: I didn't want the deal.
ERB: You took it. You wanted it at the time.

> how do you plead, sir, guilty or not guilty?
> HEYWARD: Guilty.
> COURT: Are you in fact guilty, sir?
> HEYWARD: No, I'm not really guilty.
> COURT: Alright. See you Monday [m]orning.
> ERB: What is the matter with you?
> HEYWARD: (Unintelligible).
> ERB: Jesus Christ.
> CLERK OF COURT: You need to cross this out.
> ERB: Could I have a minute to talk with him, Judge?
> COURT: Sure.
> (NOTE: AFTER A PAUSE, THE FOLLOWING TRANSPIRED:)
> ERB: He understands, Judge. I've explained it to him and he understands now, sir.
> COURT: Mr. Heyward, to the question of asking you whether or not you are in fact guilty, what do you understand about that?
> HEYWARD: I'm guilty.
> COURT: That's not the answer to my question.
> HEYWARD: I understand when you ask me did I committed [sic] the crime, yeah.

The exchange plainly calls into question whether Heyward would have pled guilty if his counsel had not intervened. In fact, the colloquy reveals counsel's apparent anger at Heyward for initially denying his guilt and thwarting the plea proceedings, which raises additional questions about the voluntariness of the decision to enter the pleas.

Heyward asserts that other than negotiating the plea bargain, Erb failed to do anything to ensure a meaningful adversarial process, thereby resulting in the constructive denial of counsel. While a constructive denial of counsel will relieve a defendant of the burden of establishing prejudice stemming from counsel's errors, any presumption of prejudice in this case is unnecessary because Heyward has demonstrated prejudice. *State v. Heath*, supra. The evidence of record supports a finding that there is the reasonable probability that, had Heyward been advised of the serious problems with the State's case against him, including the existence of the potentially exculpatory witness, he would have insisted on going to trial. Id. Thus, the habeas court erred in finding that Heyward had failed to satisfy either prong of *Strickland*. Accordingly, its judgment cannot stand. The case is remanded to the habeas court for proceedings consistent with this opinion.

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED FEBRUARY 2, 2004.

Stanley L. Heyward, *pro se*.

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark A. Gilbert*, for appellee.

*James C. Bonner, Jr., Sarah L. Gerwig*, amici curiae.